No. 25-10515

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

CENTER FOR BIOLOGICAL DIVERSITY,

*Petitioner*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; and

LEE ZELDIN, in his official capacity as Administrator
of the United States Environmental Protection Agency,

*Respondents*,

MOSAIC FERTILIZER, LLC

*Intervenor-Respondent.*

On Petition for Review of an Order of the
Environmental Protection Agency

## INTERVENOR-RESPONDENT MOSAIC FERTILIZER, LLC'S REPLY IN SUPPORT OF THE MOTION TO DISMISS PETITION AS MOOT

Elissa J. Preheim
Elisabeth S. Theodore
Samuel I. Ferenc
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 942-5000
Fax: (202) 942-5999
elisabeth.theodore@arnoldporter.com

## CERTIFICATE OF INTERESTED PARTIES AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1(a)(1) and 26.1-2(c), intervenor-respondent Mosaic Fertilizer, LLC, through undersigned counsel, hereby submits this Certificate of Interested Persons and Corporate Disclosure Statement.

- Mosaic Fertilizer, LLC is a Delaware limited-liability company and a wholly-owned subsidiary of The Mosaic Company (NYSE: MOS), a publicly held corporation.

Further, the following is a complete list of interested persons pursuant to Eleventh Circuit Rule 26.1-2(a) that have an interest in the outcome of this appeal:

1. Arnold & Porter Kaye Scholer LLP (Attorneys for Intervenor-Respondent)

2. Center for Biological Diversity (Petitioner)

3. Ferenc, Samuel I. (Attorney for Intervenor-Respondent)

4. Gustafson, Adam (Counsel for Respondents)

5. Luna, Mario Alfonso (Counsel for Respondents)

6. Maher, Ryan (Attorney for Petitioner)

7. McLean, Megan (Counsel for Respondents)

8. Mosaic Fertilizer, LLC (Intervenor-Respondent)

9. Preheim, Elissa J. (Attorney for Intervenor-Respondent)

10. Stander, Robert N. (Counsel for Respondents)

11. The Mosaic Company, MOS (Parent company of Intervenor-Respondent)

12. Theodore, Elisabeth S. (Attorney for Intervenor-Respondent)

13. United States Environmental Protection Agency (Respondent)

14. Whitlock, Ragan (Attorney for Petitioner)

15. Zeldin, Lee; Administrator, Environmental Protection Agency (Respondent)

/s/ Elisabeth S. Theodore
Elisabeth S. Theodore

*Counsel for Mosaic Fertilizer, LLC*

**REPLY**

The Petition for Review should be dismissed as moot. Petitioner Center for Biological Diversity challenges the Notice of Approval that authorized construction of the Pilot Project. But as Intervenor-Respondent Mosaic Fertilizer, LLC ("Mosaic") explained in its motion to dismiss, construction of the phosphogypsum segments is now finished. It is well-settled that a construction project's completion moots challenges to its approval. Petitioner's attempts to manufacture a continuing controversy fail.

1.      Petitioner does not dispute that a long line of cases establishes that a challenge to a decision authorizing construction becomes moot when the construction is complete. *See Nat'l Parks Conservation Ass'n, Inc. v. U.S. Army Corps of Eng'rs*, 574 F. Supp. 2d 1314, 1322 (S.D. Fla. 2008) (citing *Save the Bay, Inc. v. U.S. Army*, 639 F.2d 1100, 1103 (5th Cir. 1981) and *Fla. Wildlife Fed'n v. Goldschmidt*, 611 F.2d 547, 548 (5th Cir. 1980) (per curiam)); *see also* Mot. 5 (collecting cases).[1]

Instead, petitioner wrongly contends (at 5) that the challenged Notice of

---

[1] Petitioner argues (at 9) that these, and other construction-specific cases cited in the motion, are inapposite because the underlying claims in those cases were not brought under the Clean Air Act. But petitioner does not explain why mootness would be different under the Clean Water Act or National Environmental Policy Act. Mootness is an Article III doctrine, not a Clean Air Act one. Notably, petitioner itself cites no Clean Air Act cases.

Approval is not a "construction-phase permit with conditions that end at the moment of construction." But the letter EPA sent to Mosaic approving the Pilot Project states it is "valid only for the construction of the specific pilot project as described by the applicant." App.112.[2] The reason Mosaic needed approval to construct the road is that 40 C.F.R. § 61.206(b) bars companies from removing phosphogypsum from a stack for particular purposes without prior approval from EPA, and Mosaic removed phosphogypsum from a stack to construct the road. Mosaic does not need ongoing approval to continue *operating* the road, which is why the testing requirements EPA imposed end after 18 months. The fact that EPA imposed a few post-construction conditions that will continue for a short period—18 months of environmental sampling—does not turn the approval notice into some sort of ongoing permitting regime, any more than a requirement for post-construction inspections turns a local construction permit into an ongoing permitting regime. Petitioner does not cite a single case supporting its argument that a construction approval notice is the equivalent of an indefinite permitting regime unless all construction approval "conditions … end at the moment of construction." Opp. 5.

The cases petitioner cites are entirely inapposite. It relies (at 8) on *Center for a Sustainable Coast v. U.S. Army Corps of Engineers*, 100 F.4th 1349, 1358 (11th

---

[2] Citations to App.[###] refer to the continuous pagination applied to the ten documents in Petitioner's Appendix.

Cir. 2024). There, an approval authorizing both the temporary construction and the subsequent existence of a dock defeated a mootness argument, because deauthorizing the underlying "permit" for the constructed project carried meaningful relief. *Id.* But in that case, the letter of permission did "more than allow construction—it authorize[d] the dock's continued existence." *Id.* at 1353. Indeed, the "Corps concede[d]" that "its permit authorizes both the temporary construction *and the subsequent existence* of the dock." *Id.* at 1349 (citing 33 C.F.R. § 325.6). That was necessary because the relevant regulation in fact required ongoing approval for the "existence" of the "structure," and stated that "[p]ermits continue in effect until they automatically expire or are modified, suspended, or revoked." 33 C.F.R. § 325.6(a), (b). "So if the letter of permission is rescinded, Lumar's right to maintain the dock will disappear along with it." *Ctr. for a Sustainable Coast*, 100 F.4th at 1358.

Not so here, where EPA's approval is not an operating "permit": it authorized the act of removing phosphogypsum from the stack, and not the indefinite existence of the road. And Mosaic will not be in violation of 40 C.F.R. § 61.206(b) if the Notice of Approval is vacated, because Mosaic has no plans to remove any additional phosphogypsum from any stack for the road; that work is complete. Indeed, while petitioner asserts that vacatur of the Notice "would render the road's very existence unlawful," Opp. 6, it cites no source or authority for that statement.

Petitioner notably does *not* go the second step and assert that vacatur would require Mosaic to remove the road.

Petitioner also cites (at 8) *Columbia Basin Land Protection Association v. Schlesinger*, 643 F.2d 585 (9th Cir. 1981). But that case involved power transmission lines built over the plaintiffs' land that were "continually obstructing their irrigation systems" and the Court concluded that the defendants "could be required to remove the line from this route" if the plaintiffs succeeded. *Id.* at 592 n.1. Here, however, petitioner has failed to point to any ongoing harm to any member from the continued existence of a road deep in Mosaic's private property, and does not actually argue that Mosaic would be required to remove the road if the Notice of Approval is vacated.

**2.** Petitioner next contends (at 5) that this case is not moot because the "requested relief of vacatur or and/or revision on remand could—at a minimum—lead to a new Notice of Approval with revised obligations to mitigate injuries to the Center's members." But petitioner does not elaborate on how "revised obligations" would redress its members' alleged injuries. The only "revised obligation" it offers (at 6) is for "meaningful monitoring mechanisms in order to address members' concerns about groundwater contamination." But the possibility of monitoring conditions or any other revisions does not save the case from mootness.

An initial problem for petitioner is that it did not challenge the Notice of

Approval on a theory that EPA failed to impose lengthy-enough monitoring. Petitioner identified three "issues presented for review." Pet. Br. 1. The first was whether "other purposes" could include roads. *Id.* The second was whether EPA should have applied a 9 in 100,000 risk threshold rather than a 3 in 10,000 threshold. *Id.* at 1, 20. The third was whether EPA failed to address individualized risk. *Id.* None of these arguments concern after-the-fact monitoring. Petitioner never argues that EPA violated any regulatory requirement by failing to require sufficient monitoring ex post. That failure distinguishes this case from *Sierra Club v. U.S. Fish & Wildlife Serv.*, 2023 WL 2570044, at *4 (M.D. Fla. Mar. 20, 2023) (cited at Opp. 8), where the court noted that the "complaint contemplates relief beyond simply enjoining construction."[3]

Aware of this problem, petitioner emphasizes that the regulations require EPA to determine whether the Pilot Project is "at least as protective, in both the short term *and the long term*, as placement in stacks." Opp. 3 (quoting 40 C.F.R. § 61.206(c)) (emphasis petitioner's). But petitioner did not argue in its opening brief that EPA

---

[3] The only thing petitioner said in its opening brief about the 18-month post-construction monitoring is that EPA had stated that such efforts "may not necessarily be sufficient to support conclusions about longer term use in a full-scale project. " Pet. Br. 50-51 (citation omitted). But that question presents no ongoing, redressable injury to either of the two members who submitted declarations in this case. No full-scale project has been authorized; if one is, petitioner may challenge it. In any event, requiring lengthier monitoring that in petitioner's view would better support a full-scale project obviously wouldn't redress any injury to petitioner, which opposes a full-scale project.

violated the regulatory words "long term" (or any other regulatory provision) by imposing 18 months of sampling. Nor did petitioner ask the Court to remand for the imposition of longer monitoring: the sole remedy petitioner requested was vacatur. Pet. Br. 54-56. Petitioner did raise this issue in reply, Pet. Reply 7-8, and—after exclusively requesting vacatur in the "Remedy" section of its opening brief—argued that the Court could instead remand and order "monitoring that extends a meaningful time," Pet. Reply 27-28. Presumably petitioner made this pivot because, by the time of its reply brief, it was aware that construction had already started. Pet. Reply 2. "Because this argument appeared for the first time in [petitioner's] reply brief," however, it is "waived." *Doe #6 v. Miami-Dade Cnty.*, 974 F.3d 1333, 1339 (11th Cir. 2020).

In any event, the argument misses the mark. The regulatory language about "long term" refers to the long-term effects of exposure to a particular radium concentration over the course of an individual's lifetime. *See* App.123 (petitioner so asserting). That determination about long-term risk has to be made *before* the approval is granted, 40 C.F.R. § 61.206(c), refuting any suggestion that the long-term risk language could possibly impose a post-construction monitoring requirement of any particular length. There is no lawful basis at all for this Court to remand to EPA to impose additional sampling requirements and petitioner makes essentially no effort to ground that suggestion in any regulatory requirement. The

Court has authority to set aside unlawful agency action, 5 U.S.C. § 706(2), not to order the agency to change discretionary conditions.

But even if the Court could somehow order the agency to revise the approval to include lengthier monitoring, petitioner "does not plausibly explain how [that] would redress its ill-defined injuries, as opposed to merely advancing generalized environmental interests." *WildEarth Guardians v. Pub. Serv. Co. of Colorado*, 690 F.3d 1174, 1190 (10th Cir. 2012). In *WildEarth*, for example, the court noted with approval cases holding that requiring "soil testing" of a contaminated area once the challenged activity was complete did not save a claim from mootness because that testing "would only achieve a generalized public benefit," and no specific individualized benefit to any petitioner. *Id.* at 1188 (internal quotation marks omitted). That is true here. Petitioner has submitted standing declarations from two members. Neither declaration mentions the 18-month testing aspect of the approval or suggests that it is insufficient, much less contends that longer monitoring would redress some injury to either declarant. Doc. 24-2, 24-3. Petitioner's brief contends that longer monitoring would "address members' concerns about groundwater contamination." Opp. 6. The declarations do not say that, but in any event, "concerns" are not an Article III injury, and addressing them would not save this case from mootness.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the petition as moot.

Dated: December 22, 2025

Respectfully submitted,

/s/ Elisabeth S. Theodore
Elissa J. Preheim
Elisabeth S. Theodore
Samuel I. Ferenc
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 942-5000
Fax: (202) 942-5999
elisabeth.theodore@arnoldporter.com

*Counsel for Mosaic Fertilizer, LLC*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 27 and 32, the undersigned counsel for Intervenor-Respondent certifies the following:

1.	This motion complies with the type-volume limitation of Fed. R. App. P. 27(d) and 32(c)(1) because it contains 1,731 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2.	This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared using Microsoft Office Word 365 and set in Times New Roman font in a size equivalent to 14 points or larger.

*/s/ Elisabeth S. Theodore*
Elisabeth S. Theodore

*Counsel for Mosaic Fertilizer, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing motion was filed electronically on December 22, 2025 and will therefore be served electronically upon all counsel.

/s/ Elisabeth S. Theodore
Elisabeth S. Theodore

*Counsel for Mosaic Fertilizer, LLC*